UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WENDY JUDITH REYES ALBERTO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 22-3094 (RBW) |
| SPECTRUM MANAGEMENT LLC, | ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION

The plaintiff, Wendy Judith Reyes Alberto, brings this civil action against the defendant, Spectrum Management LLC ("Spectrum"), asserting violations of (1) the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code §§ 32-1001, et seq.; (2) the District of Columbia Payment and Collection of Wages Law ("DCPCWL"), D.C. Code §§ 32-1301, et seq.; and (3) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.  See Complaint ("Compl.") at 1, ECF No. 1.  Currently pending before the Court is the Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 7 ("Def.'s Mot."), pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion to dismiss.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendant's Motion to Dismiss Plaintiff['s] Complaint for Failure to State a Claim ("Def.'s Mem."), ECF No. 7-1; (2) the Plaintiff's Opposition to Defendant's Motion to Dismiss or Alternatively Motion for Leave to File Amended Complaint ("Pl.'s Opp'n"), ECF No. 10; (3) the Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Opposition to Plaintiff's Motion for Leave to File Amended Complaint ("Def.'s Reply"), ECF No. 12; and (4) the Plaintiff's Reply to Defendant's Opposition to Motion to File Amended Complaint ("Pl.'s Reply"), ECF No. 15.

I.     BACKGROUND

A.     **Factual Background**

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.  The plaintiff, "a[] resident of the District of Columbia[,]" was "employed by [the defendant] from early June 2020 to September 28, 2022, when she was [allegedly] involuntarily terminated."  Compl. ¶ 1.  Throughout her employment, she worked "at the District of Columbia Central Detention Facility ('the Central Detention Facility')[.]"  Id.  She allegedly abided by a "set schedule[,]" each week, working "from 6:00 a.m. to 3:00 p.m." on "Monday through Friday" and "6:00 a.m. to 6:00 p.m." on "Saturdays," "with a one-hour lunch break" each day.  Id. ¶ 8.  Thus, she alleges that she "typically worked [fifty-one] hours per week."  Id.

The defendant, Spectrum, is "a limited liability company organized under the laws of the District of Columbia."  Id. ¶ 2.  During the period of the plaintiff's employment, the defendant allegedly "entered into a contract or contracts with the District of Columbia government to perform property management services for the Central Detention Facility."  Id.  Because these contracts allegedly "had a value in excess of $2,500.00[,]" id. ¶ 3, the plaintiff alleges that the defendant was subject to the terms and conditions of the McNamara-O'Hara Service Contract Act of 1965 ("SCA"), see id.  Consequently, the plaintiff alleges that the defendant was obligated to pay her an hourly wage "in accordance with the job classifications and rates set forth in [w]age [d]eterminations made by the United States Department of Labor ('DOL')."  Id.

According to the plaintiff, she was "employed as a janitor," id. ¶ 1, and should therefore have been classified as such within the meaning of the SCA, see id. ¶ 9–10.  And, "during the time period relevant to th[e] Complaint," the SCA hourly wages for janitors "ranged from $18.95 ($14.41(base) + $4.54(fringe)) to $20.44 ($15.64[(base)] + $4.80[(fringe)])."  Id. ¶ 9.  However,

2

when the plaintiff was hired "[i]n early June 2020," "her [wage] was [allegedly only] $14.00 per hour[;]" "[b]etween July 1, 2020 and June 30, 2021, [the defendant allegedly] paid [the p]laintiff [a wage] of [only] $15.00 per hour[;]" "from July 1, 2021 to June 30, 2022, [the defendant allegedly] paid [the p]laintiff [a wage of only] $15.20 per hour[;]" and "[o]n or about July 1, 2022, [the defendant allegedly] began paying [the p]laintiff [a wage] of [only] $19.70 per hour." Id. ¶ 10.  In addition, "[the defendant allegedly] paid [her] these rates for all of [her] time, including her overtime hours."  Id.

The plaintiff alleges that the defendant violated the FLSA, the DCMWRA, and the DCPCWL by "knowingly failing to pay [her] an overtime premium for her overtime hours[,]" and "failing to pay her anything at all for some hours of work[.]"  Id. ¶¶ 18, 25.  In addition, she alleges that the defendant violated the FLSA by "failing to apply the correct overtime rate (the DOL rate for a 'janitor'), for all of [her] overtime hours[,]" id. ¶ 18, and that the defendant violated the DCMWRA and the DCPCWL by "failing to pay [her] in accordance with the prevailing wages for a [j]anitor, as required by [the defendant's] contract with the District of Columbia and the SCA[,]" id. ¶ 25.  The plaintiff further asserts that she was "employed [ ] within the meaning of the DCMWRA, the DCPCWL[,] and the FLSA because [the defendant allegedly] treated her as an employee, [ ] maintained her employment records, [ ] paid her wages, [ ] set her pay rate, [ ] supervised her, [ ] hired her, [ ] had the authority to hire and fire her[,] and [ ] made the decision to pay her in a manner made unlawful by the DCMWRA, the DCPCWL and the FLSA."  Id. ¶ 2.  The plaintiff seeks "back wages, overtime pay, and liquidated damages, from June 2020 to September 28, 2022."  Id.

3

B.     **Procedural Background**

The plaintiff filed her Complaint in this case on October 12, 2022.  See Compl. at 1.  On February 6, 2023, the defendant filed its motion to dismiss.  See Def.'s Mot. at 1.  The plaintiff filed her opposition, or alternatively her motion for leave to file an amended complaint, on March 20, 2023.  See Pl.'s Opp'n at 1.  The defendant filed its reply in support of its motion to dismiss and its opposition to the plaintiff's motion for leave to file an amended complaint on March 27, 2023.  See Def.'s Reply at 1.  Finally, on April 3, 2023, the plaintiff filed her reply to the defendant's opposition to her motion to file an amended complaint.  See Pl.'s Reply at 1.

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing

4

Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   ANALYSIS

The defendant argues that the Complaint should be dismissed because "a violation of the SCA does not give rise to a private civil action[,]" Def.'s Mem. at 6, and the plaintiff's claims "can only be decided through the administrative procedures of the DOL, not this Court[,]" Def.'s Reply at 2.  In response, the plaintiff contends that "the SCA does not bar claims under the FLSA, the DCMWRA, or the DCPCWL because there is no conflict between them and the SCA."  Pl.'s Opp'n at 2.  The plaintiff also states that an additional "flaw in [the d]efendant's reasoning is that it fails to acknowledge that [the p]laintiff is bringing some claims that are completely independent of the SCA—i.e., claims that [the d]efendant failed to pay overtime rates based on the pay [the p]laintiff actually received."  Id.  The Court will first discuss whether the claims tied to the plaintiff's classification under the SCA may proceed, before addressing whether the claims made independent of the SCA may proceed.

**A.    Whether the Claims Tied to the Plaintiff's Classification Under the SCA May Proceed**

The plaintiff first alleges that the defendant violated the DCMWRA and the DCPCWL by "failing to pay [her] in accordance with the prevailing wages for a [j]anitor" under the SCA, Compl. ¶ 25, and that the defendant violated the FLSA by "failing to apply the correct overtime rate (the DOL rate for a 'janitor' [under the SCA]), for all of [her] overtime hours," id. ¶ 18.  In

5

response, the defendant moves to dismiss these claims on the grounds that the SCA "does not give rise to a private civil action[,]" Def.'s Mem. at 6, but instead limits the plaintiff to "the administrative remedies created by Congress and [ ] the Department of Labor under the SCA[,]" id. at 5–6.

The plaintiff agrees with the defendant that "there is [no] private right of action" under the SCA, but argues that she is not "bring[ing any] claims directly under the SCA." Pl.'s Opp'n at 1. To this end, she asserts that "while Congress chose to limit the ability of an employee to bring suit under the SCA, it preserved the employee's rights to do so under the FLSA and [local] laws like the DCMWRA and [the] DCPCWL." Id. at 10. Moreover, the plaintiff insists that she is "not alleging [that] she was misclassified[,] nor is she challenging the rates set by [the] DOL for a [j]anitor[,]" Pl.'s Opp'n at 14, and therefore an adjudication of her claims by this Court would not interfere with the "exclusive authority" of the DOL, id. at 2.

The SCA governs "any contract . . . made by the Federal Government or the District of Columbia" "involv[ing] an amount exceeding $2,500.00[,]" which "has as its principal purpose the furnishing of services in the United States through the use of service employees." 41 U.S.C. § 6702(a). Such contracts must "contain a provision specifying the minimum wage to be paid to each class of service employee . . . as determined by the Secretary [of Labor] . . . in accordance with prevailing rates in the [relevant] locality[,]" as well as "a provision specifying the fringe benefits to be provided to each class of service employee." § 6703(1)–(2). There has been "an extensive body of regulations" issued by the Secretary of Labor regarding enforcement of the SCA, including Part 1 of Title 29 of the Code of Federal Regulations, which includes "[the] procedure under which [a] contracting federal agency requests from the Secretary [of Labor] a determination of prevailing wages in the locality where the [relevant] work will be performed."

Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1223 (D.C. Cir. 1991); see 29 C.F.R. §§ 1.1–1.9 (2017).

Courts in this circuit have routinely stated that "the SCA creates no private [right of action]." Danielsen, 941 F.2d at 1228; see also United States ex rel. Conteh v. IKON Off. Sols., Inc., 27 F. Supp. 3d 80, 86 (D.D.C. 2014) ("As an initial matter, [] the [SCA] does not create a private [right] of action[.]").  Instead, "Congress [only] provided the statutory right for a limited and governmental [right] of action[,]" Danielsen, 941 F.2d at 1227, whereby "the Federal Government may bring [an] action against the contractor . . . to recover the [ ] amount of underpayment" owed to the employee, 41 U.S.C. § 6705(b)(2).  "Challenges to the Department's classification and wage-setting decisions [must be] channeled administratively through the Department's Wage and Hour Division and Wage Appeals Board." Garcia v. Skanska USA Bldg., Inc., 324 F. Supp. 3d 76, 84 (D.D.C. 2018).

Accordingly, "the implication of a private right [of action] under the SCA would undercut the specific remedy prescribed by Congress." Danielsen, 941 F.2d at 1228.  Furthermore, even though the FLSA, the DCMWRA, and the DCPCWL each authorize a private right of action, see 29 U.S.C. § 216(b); D.C. Code §§ 32-1012, 32-1308, "fram[ing] the action . . . in terms of [those statutes] adds nothing[,]" Danielsen, 941 F.2d at 1228, so long as the plaintiff is "suing for the [SCA]-mandated rate[], . . . rather [than] for the rate[] his [or her] employer[] agreed to pay him [or her,]" Garcia, 324 F. Supp. 3d at 84.  This is so because, barring agreement between the plaintiff and defendant as to the plaintiff's classification under the SCA, see id. at 85 (noting that classification under the SCA was not at issue because "the [defendants] ha[d] not questioned [the plaintiff]'s proper classification"), it is in "the province of the [DOL,]" id. at 84, to determine the plaintiff's classification and the "corresponding prevailing wage-setting[,]" id.

7

Here, the plaintiff correctly notes that she did not "bring[] [any] claims directly under the SCA." Pl.'s Opp'n at 5. Nonetheless, her claims that the defendant "fail[ed] to pay [her] in accordance with the prevailing wages for a [j]anitor" under the SCA, Compl. ¶ 25, and "fail[ed] to apply the correct overtime rate (the DOL rate for a 'janitor')," id. ¶ 18, are inextricably linked to the question of her classification under the SCA. And, while the plaintiff alleges that she "was employed as a janitor at the District of Columbia Central Detention Facility," Compl. ¶ 1, she never alleges that the DOL made a determination regarding her classification under the SCA, see generally id.; see also Dow v. HC2, Inc., No. 19-cv-839 (APM), 2019 WL 5960198, at *4 (D.D.C. Nov. 13, 2019) ("[E]mployee classification, along with the corresponding prevailing wage-setting, is the province of the Department of Labor[.]" (quoting Garcia, 324 F. Supp. 3d at 85)).

Therefore, the issue of classification under the SCA—viz., an issue that is solely within the province of the Department of Labor—persists, especially given the questions raised by the defendant in both its motion to dismiss, see Def.'s Mem. at 3 (arguing that "there is no basis for [the p]laintiff's alleged classification and corresponding wage rate claims"), and its reply to the plaintiff's opposition, see Def.'s Reply at 2 (stating that "despite [the p]laintiff's argument that her claims do not present classification or wage issues for DOL determination, a plain reading of her Complaint indicates otherwise"). See Garcia, 324 F. Supp. 3d at 84 ("[The plaintiff]'s claims . . . would [ ] short-circuit the [SCA]'s administrative process [and] embroil the Court in legal determinations [which] Congress intended the Department of Labor to resolve.") In other words, "the nub of the parties' dispute is the proper classification of [the p]laintiff[,]. . . . [and thus,] at the outset, it requires a decision on proper employee classification. [The plaintiff's] remedy therefore lies with the Department of Labor." Dow, 2019 WL 5960198, at *4.

Accordingly, the Court concludes that these specific claims do implicate the SCA and, thus, "the statutory scheme for administrative relief set forth by Congress in the SCA leaves no room for [these claims] on the present allegations."[2] Danielsen, 941 F.2d at 1226. Thus, the plaintiff cannot pursue a private right of action based on these claims. See id. at 1228 (holding that "the SCA creates no private [right of action]" and that "to frame [an] action for [an SCA] remedy in terms of [another statute] adds nothing"). The Court must, therefore, dismiss the plaintiff's claims which are dependent on her classification under the SCA.[3]

---

[2] The plaintiff makes much of the Garcia decision, which she contends "held that the [Davis-Bacon Act—viz., an analogous statute to the SCA—] did not foreclose [ ] claims under the FLSA, the DCMWRA[,] or the DCPCWL[,] where the allegations did not challenge the Department of Labor's classification or wage-setting decisions." Pl.'s Opp'n at 9. Accordingly, the plaintiff argues that her claims under the SCA should similarly be allowed "to go forward." Id. However, as another member of this Court persuasively explained in Dow, "in Garcia, 'there [was] no dispute over worker classifications or corresponding rates.' [Rather, in Garcia, the plaintiff] alleg[ed] that 'both parties understood him to be hired as a carpenter.' In fact, the Garcia court acknowledged that 'employee classification, along with the corresponding prevailing wage-setting, is the province of the Department of Labor,' and that, unlike a misclassification case, 'Garcia's claims would not require any classification or wage-setting decisions of the kind Congress has reserved for the Department of Labor.'" Dow, 2019 WL 5960198, at *4 (alteration in original) (quoting Garcia, 324 F. Supp. 3d at 85).

Here, on the other hand—for the reasons discussed supra—"the nub of the parties' dispute is the proper classification of [the plaintiff]. [Therefore, the plaintiff's] case is exactly what Garcia's was not—at the outset, it requires a decision on proper employee classification." Id. Accordingly, this case is distinguishable from Garcia, and the plaintiff's remedy for her SCA-related claims "lies with the Department of Labor." Id.

[3] The plaintiff also states that "[t]o the extent the Court finds that [the p]laintiff has not met the pleadings burden and the factual allegations are inadequate, [the p]laintiff seeks leave to file a first amended complaint to cure any such deficiency." Pl.'s Opp'n at 7. However, the plaintiff's request is improper. More specifically, the plaintiff "failed to comply with the law of this circuit by filing a motion for leave to amend her complaint and attaching a proposed amended complaint." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012) (citing Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006)). "Instead, she requested leave to amend as an alternative argument in her opposition to the [defendant's] motion[] to dismiss." Id. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion with the contemplation of Rule 15(a)." Id. (alteration in original) (quoting Belizan, 434 F.3d at 582). Moreover, "D.C. District Court Local Civil Rule 15.1 requires a motion for leave to amend to include a proposed amended complaint." Id. Here, the plaintiff's "request neither included a proposed amended complaint nor otherwise indicated that she would be able to plead sufficient facts to state a plausible claim for relief." Id. Accordingly, the Court denies the plaintiff's request for leave to amend in the manner in which it has been presented to the Court.

### B. Whether the Claims Made Independent of the Plaintiff's Classification Under the SCA May Proceed

Having concluded that the plaintiff's SCA-related claims must be dismissed, the Court now turns to the plaintiff's claims made independent of the classification of her prior employment under the SCA. The plaintiff alleges that the defendant violated the DCMWRA, the DCPCWL, and the FLSA by "fail[ing] to pay [her] overtime rates based on the pay [she] actually received." Pl.'s Opp'n at 2. She argues that these claims "could not possibly implicate or conflict with the SCA" because they do not depend on a "determin[ation of] the [plaintiff's] appropriate worker classification" under the SCA. Id. In response, the defendant simply groups these claims together with the SCA-related claims, insisting that the plaintiff's claims "can only be decided through the administrative procedures of the DOL, not this Court." Def.'s Reply at 2. The defendant does not otherwise address the merits of these specific claims in either its motion to dismiss, see generally Def.'s Mot; Def.'s Mem., or its reply to the plaintiff's opposition, see generally Def.'s Reply.

Under the FLSA, employees who work more than forty hours per week are entitled to overtime compensation "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). Likewise, under the DCMWRA, employees with a "workweek [] longer than [forty] hours" are owed overtime compensation "at a rate not less than [one and one-half] times the regular rate at which the employee is employed." D.C. Code § 32-1003(c). Finally, under the DCPCWL, employers must "pay all wages earned to his or her employees[,]" D.C. Code § 32-1302, where "wages" refers to "all monetary compensation . . . owed by an employer[,] including an "[o]vertime premium[,]" § 32-1301(3).

The FLSA, the DCMWRA, and the DCPCWL each authorize a private right of action. See 29 U.S.C. § 216(b); D.C. Code §§ 32-1012, 32-1308; see also Garcia, 324 F. Supp. 3d at 79–

10

80 (concluding that "[l]ike the FLSA, the DCMW[R]A [and the DCPCWL] create[] a private right of action"). Thus, an "aggrieved employee[,]" Garcia, 324 F. Supp. 3d at 79, may bring an action under one or more of these statutes to recover unpaid overtime compensation, at least to the extent that there is "no dispute over worker classifications or corresponding rates[,]" id. at 85. Notably, however, the employee's remedy is "limited . . . to one-and-a-half times the hourly rate[] actually paid[,]" rather than "the more generous prevailing wage structure of the [Davis-Bacon Act[4]]" or the SCA, because "the FLSA[, the DCMWRA, and the DCPCWL] . . . do[] not address liability for underpayment of hours at prevailing wage rates." Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003) (citing 29 U.S.C. § 206(a)(1)); see Cruz v. Jimenez Constr. LLC, No. 20-cv-1978 (EGS), 2023 WL 2733765, at *5 (D.D.C. Mar. 31, 2023) (quoting Grochowski for the proposition that a district court must "limit[] the plaintiffs' claims under the FLSA for unpaid overtime compensation to one-and-a-half times the hourly rates actually paid" (alteration in original) (emphasis added)).

Here, the plaintiff's claim that the defendant "failed to pay [her] overtime rates based on the pay [she] actually received[,]" Pl.'s Opp'n at 2, may be brought pursuant to the FLSA, the DCMWRA, and the DCPCWL, see Garcia, 324 F. Supp. 3d at 79–80. This claim does not implicate a dispute over "the Department of Labor's classification or wage-setting decisions[,]" id. at 80, as it does not hinge on whether the plaintiff was correctly classified as a "[j]anitor[,]" Compl. ¶ 1, under the SCA, see Garcia, 324 F. Supp. 3d at 80, 85. Instead, the plaintiff is simply claiming that she was entitled to "overtime rates based on the pay [she] actually received" from the defendant. Pl.'s Opp'n at 2. And, by otherwise not addressing the merits of these specific

---

[4] The Davis-Bacon Act covers "all laborers and mechanics working on federally funded construction projects[,]" Johnson v. Prospect Waterproofing Co., 813 F. Supp. 2d 4, 6 (D.D.C. 2011), but is considered "otherwise analogous" to the SCA, id. at 8.

11

claims, see generally Def.'s Mot.; Def.'s Mem.; Def.'s Reply, the defendant effectively concedes them. See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 238 F. Supp. 2d 174, 179 (D.D.C. 2002) ("It is well understood in this Circuit that when a [defendant] files an opposition to a motion . . . addressing only certain arguments raised by the [plaintiff], a court may treat those arguments that the [defendant] failed to address as conceded."). Nonetheless, as noted already, any recovery available to the plaintiff would be capped at "one-and-a-half times the hourly rate[] actually paid[,]" Cruz, 2023 WL 2733765, at *5 (quoting Grochowski, 318 F.3d at 87), in compliance with the limitations imposed by the FLSA, the DCMWRA, and the DCPCWL, see Grochowski, 318 F.3d at 87 (holding that the FLSA "does not address liability for underpayment . . . at [the SCA's] prevailing wage rates"); see generally D.C. Code §§ 32-1001, et seq.; D.C. Code §§ 32-1301, et seq.

Thus, the plaintiff may pursue her claims that are not associated with the question of her classification under the SCA. See Garcia, 324 F. Supp. 3d at 80 (holding that claims under the FLSA, the DCMWRA, and the DCPCWL do "not present a[] Danielsen problem . . . [where] there is no dispute over worker classifications or corresponding rates"); see also Cruz, 2023 WL 2733765, at *5 (concluding that the "[p]laintiffs' claims based on non-[SCA] wages may proceed"). Accordingly, the Court must deny the defendant's motion to dismiss with respect to the plaintiff's claims made independent of her classification under the SCA.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendant's motion to dismiss, and deny the plaintiff's motion for leave to file an amended complaint.

**SO ORDERED** this 26th day of April, 2024.[5]

REGGIE B. WALTON<br>
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.